Harold Maxwell, Sr., et al. [1] v. Commissioner. Maxwell v. Commissioner
Docket Nos. 26028, 26029, 27673, 27674, 27675.
United States Tax Court
1953 Tax Ct. Memo LEXIS 388; 12 T.C.M. (CCH) 63; T.C.M. (RIA) 53032; January 30, 1953
*388 Robert Ash, Esq., 550 Munsey Bldg., Washington, D.C., Carl F. Bauersfeld, Esq., and W. H. Lee, Esq., for the petitioners. E. M. Woolf, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income taxes against the petitioners for the years and in the amounts as follows: Docket
Petitioner
Number
Year
Deficiency
Harold Maxwell, Sr.
26028
1943
$26,460.56
1944
21,025.01
1945
18,364.67
27674
1946
11,856.10
Harold Maxwell, Sr., and Julia M. Maxwell, Husband
and Wife
27673
1947
36,963.16
Estate of Raymond Maxwell, Sr., Deceased, Mary
Charles Maxwell, Administratrix
26029
1943
29,094.88
1944
24,164.20
1945
21,134.82
27675
1946
14,327.93
1947
42,464.00
The contested issue is whether the respondent properly determined that the trusts established by Harold Maxwell, Sr., and Raymond Maxwell, Sr., were not bona fide members of the partnership business conducted under the name of Maxwell Company during the taxable years 1943 to 1947, inclusive. Findings of Fact Part of the facts are stipulated and are found accordingly. *389 Petitioner Harold Maxwell, Sr., hereinafter sometimes referred to as Harold, filed individual income tax returns for the calendar years 1943 through 1946. For the year 1947, Harold, with Julia Murvin Maxwell, his wife, filed a joint income tax return. These returns were filed with the collector of internal revenue for the district of North Carolina, at Greensboro. Petitioner Mary Charles Maxwell is a duly qualified and acting administratrix of the estate of her late husband, Raymond Maxwell, Sr., who died January 11, 1949. The decedent, sometimes hereinafter referred to as Raymond, filed his individual income tax returns for the years 1943 through 1947 with the collector of internal revenue for the district of North Carolina, at Greensboro. Harold and Raymond were brothers. Harold and Julia M. Maxwell have two children, Harold, Jr., born August 19, 1922, and Julia Murvin, born February 27, 1925. In addition to his widow, Mary Charles Maxwell, Raymond left three surviving children. The eldest, Raymond, Jr., was born July 11, 1929; two daughters, Kathryn Miller and Mary Gary, were born May 9, 1931, and December 31, 1934, respectively. Maxwell Company is a wholesale mercantile *390 enterprise with its principal place of business at New Bern, North Carolina. Harold and Raymond conducted the business of Maxwell Company as a partnership until December 1, 1933. On that date Maxwell Company was incorporated, with Harold and Raymond owning all of the capital stock equally with the exception of one qualifying share. On November 30, 1940, the corporation, Maxwell Company, Inc., was liquidated and dissolved and its assets transferred to Harold and Raymond. On that date their total capital investment was $290,391.87. On December 1, 1940, the business of Maxwell Company, Inc., was transferred to a partnership known as Maxwell Company, composed of Harold and Raymond. Under the partnership agreement dated November 29, 1940, it was agreed, inter alia, that each partner should devote his entire time and attention to the business; that each partner should receive and withdraw the same amount for his services as from time to time was mutually agreed upon, and each should share equally in all profits and losses. It was further provided that the partnership should continue in full force and effect until one of the partners had given the other partner two months' written notice *391 of his desire to dissolve the partnership. The partnership reported its income on a fiscal year basis ended November 30 and used the accrual method of accounting. Capital is a material income-producing factor. For a period of two years or longer prior to November 29, 1941, Harold and Raymond discussed together the idea of giving to each of their children an interest in Maxwell Company in order to provide for their future financial security, as well as to interest them in carrying on the business. On November 29, 1941, Harold Maxwell, Sr., executed two irrevocable deeds of gift transferring to his wife, Julia Murvin Maxwell, as trustee, for the benefit of his two minor children,.137744907 per cent of his undivided one-half interest in the Maxwell Company. The value of the gift to each trust was $20,000. On the same day he conveyed and transferred by two separate instruments.195588402 per cent of his undivided one-half interest in the Maxwell Company to each of the trusts created for his two minor children for a consideration of $28,398.64 to be paid by each trust. On November 29, 1941, Raymond Maxwell, Sr., executed three irrevocable deeds of gift transferring to his wife, Mary *392 Charles Maxwell, as trustee, for the benefit of his three minor children,.091829978 per cent of his undivided one-half interest in Maxwell Company. The value of the gift to each trust was $13,333.34. On the same day he transferred and conveyed to each of the trusts created for his three children.158170056 per cent of his undivided one-half interest in the Maxwell Company for a consideration of $22,965.65 to be paid by each trust. Each of the five deeds conveying the respective interests sold provided that the trustee of each trust should execute and deliver a promissory note in the amount of the consideration to be paid by each trust, bearing interest at the rate of three per cent per annum and payable one year after date. The notes were all dated November 29, 1941. The interest and principal of each of the notes was fully discharged during the year 1945 out of the earnings and profits of the Maxwell Company distributed to the respective trusts. Both Harold Maxwell, Sr., and Raymond Maxwell, Sr., returned as income the interest received from the respective trustees in the year of its receipt. The five deeds of gift differed in form and contents only as to names and amounts. The *393 same situation applies to the five deeds of sale. The deeds of sale provided that the additional interest acquired by purchase was to be subject to all of the provisions contained in the deeds of gift in trust. The deeds of gift in trust provided that the trust should terminate on December 31, 1955, at which time the trustee was directed to pay the undistributed income and corpus to the primary beneficiary, if living, and, if deceased, to the surviving child or children of the respective donors. There was no gift over of the accumulated income and corpus, in the event there were no living children of the donors at the time fixed for the termination of the trust. The powers of the trustee were very broad and are set forth in the following provisions of a typical trust instrument: "That the said party of the second part, Trustee as aforesaid, shall at all times during the continuance of this trust, have full power and authority, at her absolute discretion, to manage, control and direct the trust estate hereby vested in her; to sell and convey, at such price, in such manner, and upon such terms as she may deem expedient and proper, any property in her hands or which hereafter may *394 come into her hands as Trustee under this trust according to her sound discretion and judgment and in the same manner as if she were the absolute owner thereof. Said Trustee, in her discretion, from time to time, is expressly authorized and empowered to lease, mortgage and convey, upon such terms as she may deem best, any or all of the real and personal estate belonging to the trust and reinvest the proceeds as she, in her discretion deems best, and the same shall be part of the principal of the trust estate and be subject to all the provisions thereof, and said Trustee is authorized to execute, acknowledge and deliver any and all legal instruments in writing which may be required to execute the aforesaid powers. Said Trustee is expressly authorized and empowered to borrow and raise any sum or sums of money which she shall think necessary or expedient for the execution of any of the trusts and powers herein contained, and secure the payment thereof by executing any note or notes or mortgage or deeds of trust conveving as security any or all of the property belonging to said trust, and any such mortgage or deed of trust shall contain such powers of sale and such other powers and provisions *395 as said Trustee shall think fit, and for the best interest of the beneficiary of the trust herein provided. But the person or persons advancing any money as purchase price of any of the property belonging to the trust estate or making any advancements or loan of money, as aforesaid, shall not be bound or concerned or required to see that the money proposed to be raised is actually wanted or needed for the purposes aforesaid, or otherwise as to the propriety or expediency of such money being raised, or to see to the application thereof, and the receipt of the Trustee for any monies paid to her shall be an absolute discharge of the person or persons advancing or paying the same. "The said Trustee may continue the trust estate, or any part thereof, in its present state, or in any other manner in which it may be converted or reinvested, without regard to the laws of North Carolina relating to investment of funds belonging to trust estates. In the event said Trustee elects to change any investment of the trust estate or to lend or invest any cash or other funds belonging to the trust estate, such loan or investment may be of such kind or character as Trustee shall approve and need not *396 be restricted to the character of loan or investment provided by law for trusts. All of the said authority and powers may be exercised and acts done and performed by said Trustee, including the sale, investment, reinvestment, or other disposition of the property belonging to the trust estate, at private or public sale, with or without notice or advertisement, for cash or on credit, and without petition to, or approval by, or order from, the Superior Court, or any judge thereof, and the said Trustee is not to be held responsible for any losses resulting from any investments of the trust funds as herein specified and provided, and the Trustee shall only be required to exercise sound discretion and act in good faith in the execution of the powers and trusts herein granted. "The said Trustee shall collect and receive the rents, issues and profits belonging to the trust estate and out of same, keep the buildings and premises in good order and repair, and properly insure and pay all taxes, assessments and charges that may be levied and imposed thereon; and shall pay such expenses, charges, salaries and costs as may be fair and reasonable and equitable in the proper management and operation *397 of the partnership business and in proportion to the interest herein conveyed. "The net income, rents and profits received from the property held by said Trustee may be allowed to accumulate and be reinvested in said partnership, or in any partnership or corporation that may be successor thereto, or may be otherwise invested or expended by said Trustee in her discretion, provided that no part of said trust, property or estate, either income or corpus, shall be expended by such Trustee for the education, support or necessities of said beneficiary so long as either the father or the mother of said beneficiary remains in life and can provide adequately for the education, support and maintenance of said beneficiary. "Except for the limitation and condition contained in the preceding paragraph, the said Trustee may expend income of said trust estate in such manner as she thinks proper to promote the advancement, happiness and well being of said beneficiary during the period of this trust. The said Trustee may accumulate such income in whole or in part and the entire trust estate, both corpus and accumulated interest and income, shall be turned over to said beneficiary in fee simple *398 at the time that this trust shall cease and terminate, as herein provided. "Should the said beneficiary die before the termination of this trust, the said trust property shall thereupon be vested in the said Trustee for the use and benefit, in equal shares, of my other two children, Raymond Maxwell, Jr., and Kathryn Miller Maxwell, or entirely for the one then surviving, if either of them be dead, for whom I am contemporaneously herewith executing deeds of gift to said Trustee, the additional trust property so acquired by said Trustee to be subject to all of the terms and provisions of the trust deeds this day executed by me in favor of said Trustee for my other two children, respectively, just as if said additional property constituted a part of the original gift and trust therein created. "The Trustee is expressly relieved from giving any bond, or filing any report, or doing any other acts required by law, in connection with the administration and execution of said trust estate, and all that shall be required of her is the furnishing to the donor and the beneficiary, or beneficiaries, under said trust, of a written statement showing the actual status of said trust estate, in *399 the event such report shall be called for either by the donor or the beneficiary." Each settlor reserved the right during his life to name a successor trustee in the event of the death, resignation or disqualification of any trustee named in the trust instrument, or any successor trustee. In the event of the death of the settlor any successor trustee was to be appointed by a judge of the Superior Court of the Fifth District of North Carolina. Each donor filed federal and state gift tax returns reporting the gifts of the partnership interest. Because of the allowable statutory exemption no gift tax was payable. The deeds of gift and the deeds of conveyance were recorded with the register of deeds of Craven County, North Carolina. During each of the years 1942 to 1947, inclusive, the partnership returns of Maxwell Company disclosed the distributive shares of the profits were in the amounts as follows: Fiscal Year Ended Nov. 30
1942
1943
1944
1945
1946
1947
Raymond
Maxwell, Sr
$ 13,186.95
$12,143.04
$12,333.32
$11,138.03
$ 9,230.86
$ 20,326.12
Mary
Maxwell,
Trustee: Raymond
Maxwell, Jr
13,186.93
12,143.04
12,333.32
11,138.03
9,230.87
20,326.12
Kathryn M.
Maxwell
13,186.93
12,143.04
12,333.32
11,138.02
9,230.87
20,326.12
Mary G.
Maxwell
13,186.93
12,143.04
12,333.31
11,138.02
9,230.87
20,326.12
Harold
Maxwell, Sr
17,582.59
16,190.72
16,444.43
14,850.70
12,307.82
27,101.50
Julia M.
Maxwell, Trustee: Harold Maxwell, Jr.
17,582.58
16,190.72
16,444.43
14,850.70
12,307.82
27,101.49
Julia M. Maxwell
17,582.58
16,190.72
16,444.42
14,850.70
12,307.82
27,101.49
Total
$105,495.49
$97,144.32
$98,666.55
$89,104.20
$73,846.93
$162,608.96
*400 The separate fiduciary returns filed for the years 1942 to 1947, inclusive, by Julia Murvin Maxwell, as trustee for each of the two beneficiaries, Harold Jr., and Julia M. Maxwell, disclose the following: Deduction for
Tax Shown
Fiscal Year
Income
N.C. State
Contri-
Income Dis-
Due on Fidu-
Ended 11-30
Reported
Interest
Income Taxes
butions
tributed
ciary Return
1942
$17,582.58
$851.96
$8,791.29
$ 1,186.26
1943
16,190.72
658.24
$295.92
4,742.81
1944
16,444.43
358.47
797.27
5,360.07
1945
14,850.70
61.78
836.02
7,425.35
1,681.10
1946
12,307.82
261.81
3,737.86
1947
27,220.63
571.55
$42.50
10,490.77
The separate fiduciary returns filed for the years 1942 to 1947, inclusive, by Mary Maxwell, as trustee for each of the three beneficiaries, Raymond, Jr., Kathryn Miller Maxwell, and Mary Gary Maxwell, disclose the following: Deduction for
Tax Shown
Fiscal Year
Income
N.C. State
Contri-
Income Dis-
Due on Fidu-
Ended 11-30
Reported
Interest
Income Taxes
butions
tributed
ciary Return
1942
$13,186.93
$688.97
$6,593.47
$ 766.76
1943
12,143.04
540.39
$184.95
3,120.72
1944
12,333.32
301.63
522.19
3,594.71
1945
11,138.03
65.13
552.22
3,112.47
1946
9,231.62
485.10
2,439.22
1947
20,415.17
373.90
$31.87
6,851.22
*401 Each trust kept separate books of account showing all of the income received and all expenses, disbursements, distributions and investments of income. After the receipt of the profit distributions of the Maxwell Company, the trustees paid the federal and state income taxes due, as set forth in the foregoing schedules, the interest due on the notes, and installment payments on the principal. The balance of the proceeds was invested in United States Government bonds. Any odd remaining cash balance was deposited in savings accounts for the individual trusts. All bonds purchased and bank pass books remained in the exclusive custody and possession of the trustees. No funds of the trust estates have been used by the trustees for the maintenance, education or support of any of the beneficiaries. The only cash distribution made by the trustees to any of the beneficiaries during the taxable years involved was the amount of $2,500 paid to Harold, Jr., in 1947. No part of the income of any of the trusts has found its way back to either of the settlors of the respective trusts. Except such portions of the trust income used to discharge the promissory notes and accrued interest thereon, no *402 trust income has been loaned or invested in the Maxwell Company. The instruments creating the trusts provide that the old partners consent to the admission of the trustees of the respective trusts as members of the partnership of Maxwell Company. No new partnership agreement was ever executed, nor does the record disclose any of the terms of any alleged oral agreement. The trustees never took an active interest in the partnership nor participated in any way in the control or management thereof, and made no decisions with respect to policy. The Maxwell Company continued to operate with the same capital and under the complete control and dominion of the two original partners. No one of the beneficiaries of the trusts, during the taxable periods involved, ever actively participated as a partner or performed any services, except that the sons, Harold, Jr., and Raymond, Jr., from the time they became 14 years of age, rendered sporadic services of a minor nature before and after school hours and during the vacation periods. Harold, Jr., served in the armed services during the period April 1943 to May 1946. In 1940, Harold, Jr., entered Davidson College, and after his return from the *403 armed services re-entered college and was graduated in 1948. Raymond, Jr., attended Princeton University from 1947 to 1951 and later entered the Harvard graduate school. Raymond Maxwell, Sr., died January 11, 1947, and under the laws of North Carolina the partnership was dissolved. The business was continued in corporate form. The respective partnership interests were exchanged for stock in the new corporation. By order of the Superior Court of Craven County, North Carolina, Mary Charles Maxwell, as administratrix of the estate of Raymond Maxwell, Sr., deceased, was authorized to exchange the partnership interest of the decedent for stock of the new corporation. During the taxable years involved Harold Maxwell, Sr., and Raymond Maxwell, Sr., did not, in good faith and acting with a business purpose, intend to join together with Julia Murvin Maxwell and Mary Charles Maxwell, trustees, as partners in the present conduct of the mercantile business carried on under the name of Maxwell Company. Opinion LEMIRE, Judge: The question presented is whether the respondent properly determined that the trustees of the respective trusts involved were not bona fide members of the partnership *404 business carried on under the name of Maxwell Company during the years involved. The existence of the family partnership does not create a status which itself determines tax questions. The question is to be resolved by the application of standards of judgment and manifestations of good faith to the extent acceptable between unrelated individuals. The family relationship merely requires a closer scrutiny in determining the realities and substance of the transaction. The issue is factual, and the Supreme Court in , has set forth a number of factors to be considered in determining the real intention of the parties to join together in the conduct of a partnership business. Primarily among such factors is the existence of a formal agreement and the conduct of the parties in the execution of its provisions. The record here discloses that if any partnership agreement existed it was an oral one, the terms of which are not disclosed. The conduct of the parties in the execution of the alleged oral agreement appears to be evidenced by the partnership tax returns showing that the profits of the business were distributed in proportion to *405 the respective capital interests. The documentary evidence discloses that the trust estates contributed no new capital. The trustees rendered no services and the evidence does not show that they participated in the management or in the making of partnership policy. By the deeds of gift and the deeds of conveyance, one of the original partners disposed of two-thirds and the other partner disposed of three-fourths of their respective undivided partnership interests. While capital was a material income-producing factor, the original partners, whose knowledge, skill and personal services largely contributed to the success of the business, continued to exercise the absolute control and management of the business without salary notwithstanding their lesser interests in the profits of the partnership. The petitioners make no contention that the sporadic minor services rendered by the two sons, beneficiaries of the trusts, were vital or of material significance. The petitioners' contention that the trustees should be recognized as bona fide members of the partnership appears to be largely premised on the fact that the two original partners had created irrevocable trusts; that the partnership *406 income allocable to the interests of the trusts was received by the trustees; that the donors retained no dominion or control over the income or corpus of the trusts; and that no part of the income or corpus distributed to the trusts found its way back to the settlors or to the partnership. Such facts and circumstances, in our opinion, bring the instant case within the rationale of such a typical case as , where it was held that mere legal title to capital acquired by gift is alone insufficient. Although it appears that an additional partnership interest was acquired by each trust for a stated consideration, we do not think the alleged purchase can be regarded as the result of an arm's length transaction. Each trustee, as a part of the interest acquired by gift, was obligated to purchase the additional interest for an amount in excess of the then value of the trust assets. The parties were undoubtedly aware that the purchase price could be supplied only out of future profits of the business. In the event the business was not successful there was no way of discharging the obligation assumed other than from the trust assets acquired *407 by gift. Moreover, the interest secured by the alleged purchase agreement was made subject to the provisions of the trust instrument, under which the corpus and accumulated income might conceivably revert to the settlor-vendor. The trusts were for a term of years, terminating on December 31, 1955, when the youngest beneficiary of the five trusts reached maturity. The trust income was to be accumulated in the sole discretion of the trustee. On the date the trust was to terminate the undistributed income and corpus of each trust were to be paid over to the primary beneficiary, if living, and if deceased the trust was to continue for the benefit of the surviving child or children of the settlor. There was no gift over in the event the named beneficiaries all predeceased the date of termination of the trusts. In such event the trust would fail and under the laws of North Carolina a resulting trust in favor of the donor, his heirs or legal representatives, would arise. , citing Perry on Trusts (Ed. 1899), §§ 159, 160. The gifts in trust were, therefore, not absolute and complete. As further bearing on the intention *408 of the parties, as evidenced by their conduct, the petitioners have not shown that income taxes have been paid on all of the income distributed to the alleged partnership interests. The fiduciary returns in evidence disclose that the two trusts created by Harold Maxwell, Sr., claimed as deductions from each trust, as distributions to the beneficiaries, in the year 1942 the amount of $8,791.29 and in the year 1945 the amount of $7,425.35. The fiduciary income tax returns filed for the three trusts created by Raymond Maxwell, Sr., disclose that each trust claimed as deductions, as distributions to the beneficiaries, the amount of $6,593.47 in the year 1942. The record is silent as to whether any of the beneficiaries or their respective guardians returned in those years such distributed amounts as income. So far as this record informs us the aggregate amount of $52,213.69 of the distributed partnership income involved has escaped taxation. The record contains no affirmative evidence that, after the alleged formation of the new partnership, banks, insurance companies, suppliers or other interested parties were notified that the trust estates had been admitted to the partnership business *409 carried on under the name of Maxwell Company. On consideration of all the facts and circumstances, including the lack of a formal partnership agreement, the absence of evidence of the provisions of any oral agreement, the conduct of the parties, the testimony of witnesses and the documentary evidence, we have found that Harold Maxwell, Sr., and Raymond Maxwell, Sr., in the taxable years involved did not, in good faith and acting with a business purpose, intend to join together with Julia Murvin Maxwell and Mary Charles Maxwell, trustees, as partners in the present conduct of the mercantile business carried on under the name of Maxwell Company. We hold that the respondent did not err in determining that in the taxable years involved all of the income from the partnership business conducted under the name of Maxwell Company was taxable to Harold Maxwell, Sr., and Raymond Maxwell, Sr., equally. Decisions will be entered for the respondent. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Estate of Raymond Maxwell, Sr., Deceased, Mary Charles Maxwell, Administratrix; and Harold Maxwell, Sr., and Julia M. Maxwell, Husband and Wife.↩